UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **REGINALD ALLEN** <br> 2756 Ridgewood Avenue <br> Cincinnati, Ohio  45213 <br><br> Plaintiff <br><br> -vs- <br><br> **CARAUSTAR MILL GROUP** <br> **aka CINCINNATI PAPERBOARD** <br> 5500 Wooster Road <br> Cincinnati, Ohio  45226 <br><br> Defendant | Case No. 1:09-cv-255 <br> (Judge _____) <br><br><br> **COMPLAINT WITH JURY DEMAND** |

Plaintiff Reginald Allen through his attorneys Lisa Crawford, Edward S. Dorsey, and Santen & Hughes hereby states his claims as follows:

## JURISDICTION AND VENUE

1. Plaintiff Reginald Allen ("Allen") is an African-American male who at all pertinent times has resided in Hamilton County, Ohio. From 1981 to October 15, 2007, he worked for Defendant Caraustar, most recently as a supervisor.

2. Defendant Caraustar Mill Group ("Caraustar") is an Ohio corporation engaged in the paperboard products business. Its stock is publicly traded on the NASDAQ stock exchange.  It operates a recycling facility at 5500 Wooster Road that is also known as Cincinnati Paperboard. Allen worked at that facility, and the events giving rise to this suit arose there.

3. This Court has federal question jurisdiction over this matter under 29 U.S.C. §1331 because Counts I through III raise claims arising under the laws of the United

States. This Court has supplemental jurisdiction over the State law claims asserted in Counts VI and V under 29 U.S.C. §1367.

4. Venue of this matter is proper in this judicial district under 29 U.S.C. §1391(b) because Caraustar resides in this judicial district for venue purposes, and because a substantial part of the events or omissions giving rise to these claims occurred within this judicial district.

5. This matter is properly filed in the Western Division of this Court under L.R. 82.1 because Caraustar resides in this Division within the meaning of the rule.

6. In February 2008, Allen timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging that he was discharged and denied severance because of his race. On or about August 28, 2008, the EEOC issued a determination finding that there was reasonable cause to believe that Caraustar discriminated against Allen as alleged in the Charge. On or about January 9, 2009, the EEOC issued to Allen Notice of his Right to Sue Caraustar. All procedural prerequisites for this suit have thus been satisfied.

**FACTS COMMON TO ALL COUNTS**

7. Allen is a recovering alcoholic. At all pertinent times, his alcoholism has been a "serious health condition" within the meaning of the Family and Medical Leave Act ("FMLA"). It also constitutes a disability within the meaning of Ohio Revised Code §4112.

8. At all pertinent times, Allen worked sufficient hours, and had sufficient tenure, at Caraustar to be eligible for leave under the FMLA if necessary to receive treatment for his own serious medical conditions.

9. Allen was a good and successful employee of Caraustar, working his way up to be the first African-American supervisor at the Wooster Road facility.

10. In 2006, Caraustar published to its employees a Drug and Alcohol Policy. Among other things, this policy provided that a "routine" DUI "will not result in termination of an employee."

11. Caraustar's policy further provided that Caraustar would grant one medical leave for alcohol problems in any three year period, up to a maximum of 2 such leaves during the employee's entire period of employment. These restrictions on the frequency and total number of leaves allowed for alcohol-related treatment violated the FMLA. Under the FMLA, the employee is entitled to 12 weeks of unpaid leave per 12 months for the treatment of serious health conditions such as alcoholism.

12. In 2001, Allen was charged with a DUI. He was not working at the time of his arrest, and his DUI had no connection to his work for Caraustar. As part of the criminal charges against him, he was required to receive in-patient treatment for his alcoholism. He requested, and Caraustar allowed, leave under the FMLA to attend such treatment.

13. In April 2007, Allen was charged with another DUI. Once again, he was not working at the time of his arrest, and his DUI had no connection to his work for Caraustar. As part of the criminal charges against him, he was again required to receive in-patient treatment for his alcoholism. In October 2007, Allen informed Caraustar that he was at the Talbert House for treatment and requested leave under the FMLA for such treatment.

14. In violation of the FMLA, and its own policies, Caraustar denied Allen's October 2007 request for FMLA leave. Instead, Caraustar sent Allen a letter terminating his

employment effective October 15, 2007. That letter incorrectly stated that, because of his DUI, Allen was going to be incarcerated for 180 days. The letter further stated the Allen was being terminated "due to his unavailability for work."

15. Allen received treatment for his alcoholism from the Talbert House, a Cincinnati nonprofit agency well-known for its treatment of alcohol dependency. The Talbert House has been at all pertinent times a "health care provider" within the meaning of the FMLA.

16. On or about January 3, 2008, Allen completed Talbert House's Men's Extended Treatment Program. He received from the Talbert House a certificate of completion of that program.

17. In January 2008, shortly after completing the Talbert House program, Allen returned to Caraustar seeking reinstatement to his former position. His former position remained open at that time, and Caraustar was looking to fill it. Nonetheless, Caraustar refused to reinstate Allen.

18. Allen requested severance pay from Caraustar. Caraustar terminated at least two similarly situated white employees at about the same time as Allen, and Caraustar paid both of them significant severance pay. Caraustar denied Allen's request for severance pay.

19. Caraustar wrongfully denied Allen FMLA leave for his treatment at the Talbert House at the end of 2007.

20. Caraustar intentionally discriminated against Allen because of his race when it: denied him FMLA leave; terminated his employment; denied him reinstatement to his former position; and/or denied him severance pay.

21. Caraustar intentionally discriminated against Allen because of his disability when it: denied him FMLA leave; terminated his employment; denied him reinstatement to his former position; and/or denied him severance pay.

22. Allen has suffered, and will continue to suffer, lost wages, benefits, and emotional distress as a result of Caraustar's actions.

23. Caraustar took its actions with malice, spite, and/or reckless indifference to Allen's protected rights, such that an award of punitive damages is appropriate.

## COUNT I

### Family and Medical Leave Act

24. The allegations of the previous paragraphs are incorporated in this Count by reference.

25. Caraustar violated the FMLA by denying Allen's request for FMLA leave in October 2007, and thereafter terminating him for missing work.

26. Caraustar is liable to Allen for its violation of the FMLA for the amount of lost wages, benefits, and other compensation resulting from his termination, plus an equal amount as liquidated damages, pre- and post-judgment interest, and attorney's fees.

## COUNT II

### Title VII

27. The allegations of the previous paragraphs are incorporated in this Count by reference.

28. Caraustar discriminated against Allen on the basis of race in violation of Title VII when it denied him FMLA leave, terminated him, refused to reinstate him, and refused to pay him severance.

29. Caraustar is liable to Allen for its violation of Title VII for his lost wages and benefits, compensatory damages, punitive damages, and attorney's fees.

## COUNT III

## 42 U.S.C. § 1981

30. The allegations of the previous paragraphs are incorporated in this Count by reference.

31. Caraustar discriminated against Allen because of his race in violation of 42 U.S.C. §1981 when it denied him FMLA leave, terminated him, refused to reinstate him, and refused to pay him severance.

32. Caraustar is liable to Allen for its violation of 42 U.S.C. §1981 for his lost wages, benefits, compensatory damages, punitive damages and attorney's fees.

## COUNT VI

## O.R.C. §4112: Race Discrimination

33. The allegations of the previous paragraphs are incorporated in this Count by reference.

34. Caraustar discriminated against Allen because of his race in violation of O.R.C. §4112 when it denied him FMLA leave, terminated him, refused to reinstate him, and refused to pay him severance.

35. Caraustar is liable to Allen for its violation of O.R.C. §4112 for his lost wages, benefits, compensatory damages, punitive damages and attorney's fees.

## COUNT V

## O.R.C. §4112: Disability Discrimination

36. The allegations of the previous paragraphs are incorporated in this Count by reference.

37. Caraustar discriminated against Allen because of his disability in violation of O.R.C. §4112 when it denied him FMLA leave, terminated him, refused to reinstate him, and refused to pay him severance.

38. Caraustar is liable to Allen for its violation of O.R.C. §4112 for his lost wages, benefits, compensatory damages, punitive damages and attorney's fees.

WHEREFORE, Plaintiff Allen demands that the Court enter a judgment in his favor against Caraustar awarding him relief as follows:

1. On Count I, an amount in excess of $150,000 to compensate him for lost present and future wages, benefits, and other compensation, plus a like amount as liquidated damages, pre- and post-judgment interest, and attorney's fees;

2. On Count II, an amount in excess of $225,000 to compensate him for lost present and future wages, benefits, and other compensation, emotional distress, pre- and post-judgment interest, and attorney's fees, and an amount in excess of $200,000 as punitive damages;

3. On Count III, an amount in excess of $225,000 to compensate him for lost present and future wages, benefits, and other compensation, emotional distress, pre- and post-judgment interest, and attorney's fees, and an amount in excess of $200,000 as punitive damages;

4. On Count VI, an amount in excess of $225,000 to compensate him for lost present and future wages, benefits, and other compensation, emotional distress, pre- and

post-judgment interest, and attorney's fees, and an amount in excess of $200,000 as punitive damages;

5. On Count V, an amount in excess of $225,000 to compensate him for lost present and future wages, benefits, and other compensation, emotional distress, pre- and post-judgment interest, and attorney's fees, and an amount in excess of $200,000 as punitive damages; and

6. Such other legal and equitable relief as the Court deems just.

Respectfully submitted,

/s/ Edward S. Dorsey
Edward S. Dorsey (0037630)
Brandon S. Waddle (0082538)
Santen & Hughes
600 Vine Street, Suite 2700
Cincinnati, Ohio  45202
esd@santen-hughes.com
(513) 721-4450-ph / (513) 721-0109-fx
Attorneys for Plaintiff

/s/ Lisa K. Crawford
Lisa K. Crawford (0055212)
895 Central Avenue, Suite 840
Cincinnati, Ohio  45202
lisalaw@fuse.net
(513) 651-4222-ph / (513) 651-4333-fx
Attorney for Plaintiff

**JURY DEMAND**

Plaintiff hereby requests a jury demand on all issues so triable.

/s/ Edward S. Dorsey
Edward S. Dorsey

371048.1